Ruffin, C. J.
 

 The doctrine of the Courts of this State is, that gifts to public and charitable uses will be sustained in equity, when not opposed to the express provisions or the plain policy of the law, provided the object is so specific that the Court can by decree effectuate it, by compelling the execution of the will, according to the intention of the donor, and keeping the subject within the control of the Court, so as always to have the will of the donor observed. This was carried as far as it could be, in the case arising under
 
 Griffin’s
 
 will, 1 Hawks 96; which was a devise to trustees to establish a free school for orphan children or the children of indigent parents in the town of Newbern. And, as we have said in
 
 Bridges
 
 v.
 
 Pleasants,
 
 at this term, we suppose that a bequest to build Churches in this State for a particular religious denomination, where a congregation is already organized or with a view to the organization of one at such places, is sufii
 
 *21
 
 ciently definite to be established. We think so, because the Legislature recognises the existeneé of religious congregations severally, and, recently, the whole Church of each denomination in this State, (if it exist as one,) as capable of holding, either by themselves, or by trustees for them, property of any kind, not exceeding in real estate a certain value and quantity. Those trustees, the statute .says, shall account with the congregation, and they maybe compelled, by suit in a method pointed out in the Act. But the difficulty in this case arises from two circumstances ; the one, that the will is silent as to the places where the churches are to be erected; and the other, that there is no ownership conferred on any religious congregation, nor any trustees for it; nor can there be, since, from the nature of the charity, it appears to have been the purpose of the testator, that no congregation of any particular portion or sect of the Christian church should be formed at his churches, as he makes them free for all such as hold two doctrines of Christianity. Now, it seems impossible for a Court to hold, that a charity for religion is sufficiently specific, in .which no part of the Christiaix world has any property, legal or equitable ; which no one has a right to manage or preserve, and in which the Court would, perhaps, be daily called on to regulate the uses of the buildings, which the various sects would endeavor
 
 to
 
 concentrate, each one in itself. Every one is aware, that thqre are irreconcileable differences of doctrine and discipline in the several sects of even those Christians who are called orthodox ; and how bitter a spirit is engendered by the controversies that must arise from the ministers of different sects coming often into immediate contact. Hence, the Legislature, though Catholic to the utmost extent in allowing all to be alike entitled to liberty of mind and conscience, and to protection from the law for their property, has plainly acted upon the assumption, that there can be no common property between churches or sects of different
 
 *22
 
 denominations. The act secures glebes, lands, and tenements for the support of “ any particular ministers, or mode of worship,” and. all churches, chapels, and other houses, built for the purpose of public worship, to the use and occupancy of that religious society, church, sect, or denomination, to or for which they were purchased or given, or for which the churches, chapels, and other houses of publfo worship, were built. The Legislature had no hopos from a free church, in the sense of the word, that j.t was to belong to no church or sect; and the testator lived in vain, if he thought that any importunity of his executor or authority from the Court could appease the conflicts among common possessors, the ministers of contending sects, without any property or authority in cither. It seems to us, that it would be impossible for the Court to keep any control over such persons or property : and, therefore, that this is q, trust, winch the Court cannot undertake to execute, since it cannot execute it effectually. It follows, that the land must be declared to belong to the University.
 

 Per Curiam.
 

 Decree accordingly.